IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WESKAN GRAIN LLC, et al. )<br>)<br>Plaintiffs, )<br>) <br>v. )<br>)<br>KANSAS & OKLAHOMA RAILROAD, LLC, )<br>et al., )<br>)<br>Defendants. ) | Case No. 2:26-cv-02053 |

### DEFENDANT KANSAS & OKLAHOMA RAILROAD, LLC'S MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO THE COMPLAINT

Defendant Kansas & Oklahoma Railroad, LLC ("K&O"), pursuant to D. Kan. Rule 6.1, respectfully moves the Court to extend its deadline to answer or otherwise respond to Plaintiffs' Complaint to April 3, 2026 or seven days after the decision of the Surface Transportation Board ("STB"), whichever is later. K&O's response is due on March 4 but, because of closely related administrative proceedings pending before the STB, it makes sense to briefly extend the response date. *See Kan. & Okla., LLC— Lease and Operation Exemption with Interchange Commitment—Union Pac. R.R. Co.*, No. FD 36849 (STB filed Mar. 27, 2025). Here is why:

More than one year ago, plaintiff Weskan Grain LLC ("Weskan") initiated proceedings at the STB challenging the very same lease agreement in 1997 between Union Pacific Railroad Company ("UP") and K&O that forms the basis of the antitrust claims in this lawsuit. Weskan has asked the STB, the federal agency that regulates

1

railroads, to invalidate the exact same provision of that lease—known as an "interchange commitment" or "paper barrier"—that Weskan alleges in this lawsuit to be an antitrust violation. That STB proceeding is fully submitted, and the STB is statutorily required to decide the case no later than March 25, 2026.

As explained below, because of the STB's statutory charge to regulate competition in the railroad industry, its decision in that proceeding will most likely have a material effect on Plaintiffs' claims here. The best use of the Court's and the parties' time and resources, therefore, is to grant this brief extension to allow the issues to be fully framed by the STB's impending decision.

**The Allegations in the Complaint**

Plaintiffs' Complaint centers on a railroad line that K&O, a Class III short-line railroad, operates under a lease from UP, a Class I railroad. The lines at issue run between Geneseo, Kansas and McCracken, Kansas, and Healy, Kansas and Towner, Colorado (the "Leased Lines"). Compl., ECF Doc. 1, ¶ 3 (pictured on the map below in solid red).[1]

---

[1] K&O refers to the allegations in the Complaint, including the map contained therein, for purposes of this motion. K&O does not concede the accuracy of the allegations and the map.



The Lease between K&O and UP[2] dates back to 1997 (the "1997 Lease"). The 1997 Lease has always included a provision restricting K&O's interchange of traffic with connecting railroad carriers other than UP, known as an "interchange commitment" or a "paper barrier." *Id.* at ¶ 48. Interchange commitments are a common and acknowledged practice in the rail industry. So common, in fact, that they are defined by federal regulations as "a provision or agreement" between railroads such as Class III short-line carriers (like K&O) and Class I carriers (like UP) "that may limit future interchange" with a third-party carrier whether "by outright prohibition, per-car penalty, adjustment in the purchase price or rental, positive economic inducement, or other means." *Id.* at ¶ 47 (quoting 49 C.F.R. 1180.4(g)(3)(i)).

UP and K&O have since amended the Lease several times, most recently in 2019 (the "2019 Amendment") when they modified the terms of the interchange commitment in the 1997 Lease. *Id.* ¶ 47. Plaintiffs' Complaint is grounded in this

---

[2] The original 1997 Lease was between UP and Central Kansas Railway ("CKR"). K&O acquired the Lease from CKR in 2001.

2019 Amendment, alleging that the interchange commitment in the 2019 Amendment violates various antitrust laws. Specifically, Plaintiffs allege that K&O and UP "secretly and unlawfully" amended the interchange commitment to "stifle competition from" the Towner Line owned by Plaintiff Colorado Pacific Railroad, LLC ("CRX") and to "preserve control over westward shipments of grain." *Id.* at ¶¶ 1, 7, 47 (the Towner Line is pictured in green on the map above). They allege that the "paper barrier" went from a "rent-based" cost in the 1997 Lease that "would not have prevented the westward flow of traffic" *to* an "asset use fee" of $500 per car in the 2019 Amendment that "applies to every railcar that transports grain" on the Towner Line "making it cost-prohibitive" to move traffic west. *Id.* at ¶¶ 8, 48.

This litigation was instituted during the pendency of the STB proceedings. After obtaining a 14-day Clerk's extension, K&O's answer or other responsive pleading is due on March 4, 2026.

**The Ongoing STB Proceedings**

The Complaint passingly references ongoing proceedings before the Surface Transportation Board (the "STB"). *See* Compl. ¶ 10. The STB is the federal agency charged with exclusive economic regulation over the railroad industry. *See, e.g.*, *BNSF Ry. v. Hiett,* 22 F.4th 1190, 1193 (10th Cir. 2022) (citation modified) (finding ICC Termination Act of 1995 ("ICCTA"), which transferred rail regulatory authority to the STB, was passed "to establish an exclusive Federal scheme of economic regulation and deregulation for railroad transportation."); *Griffioen v. Cedar Rapids & Iowa City Ry. Co.,* 785 F.3d 1182, 1191 (8th Cir. 2015) ("The primary focus of the

ICCTA's substantive provisions is regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers."); 49 U.S.C. § 10101 (stating the policy goals underlying the ICCTA).

The STB has jurisdiction over, among other things, the approval of the sale, leasing, and operation of railroads. *See, e.g.,* 49 U.S.C. §§ 10901, 10902 (mandating STB advance approval of transactions involving the proposed purchase or lease of a railroad line). And, to be clear, the original 1997 Lease, which contains an interchange commitment, was accepted, or "exempted," by the STB under the STB's class "exemption" procedures set forth at 49 C.F.R. part 1150, subpart D. K&O acquired the lease from CKR in 2001, a transaction which was likewise approved by the STB.

On November 27, 2024, Weskan filed a petition at the STB to reopen and partially revoke approval of K&O's 2001 acquisition of the Lease from CKR because of the interchange commitment provision. *See Kan. & Okla. R.R., Inc.—Acquisition Exemption—Cent. Kansas Ry., LLC*, No. FD 34030 (STB filed Nov. 27, 2024). The STB denied the petition and directed K&O "to file a petition for exemption or application to obtain after-the-fact authority to renew the Lease and implement any amendments." *Kan. & Okla. R.R., Inc.—Acquisition Exemption—Cent. Kansas Ry., LLC*, No. FD 34030, 2025 WL 627747, at *5 (STB served Feb. 25, 2025).

As directed by the STB, K&O filed a petition on March 27, 2025, seeking an exemption for after-the-fact authority to renew and amend the Lease, including the 2019 Amendment. *See Kan. & Okla., LLC—Lease and Operation Exemption with*

5

*Interchange Commitment—Union Pac. R.R. Co.*, No. FD 36849 (STB filed Mar. 27, 2025). Weskan opposed this petition, so on June 25, 2025, the STB initiated proceedings to consider K&O's petition for exemption. *See Kan. & Okla. R.R., LLC— Lease and Operation Exemption with Interchange Commitment—Union Pac. R.R. Co.*, No. FD 36849, 2025 WL 1769306, at *3 (STB served June 25, 2025). Since then, that proceeding has been vigorously litigated by UP, K&O and Weskan, and is now fully submitted to the STB. Under 49 U.S.C. § 10502(b), the STB has a statutory deadline to complete this proceeding "within 9 months after it is begun." Because the proceeding was begun on June 25, 2025, the STB must issue its decision by **March 25, 2026**. *Id.*

### The Requested Extension Pending Decision By the STB

Plaintiffs' Complaint was filed on January 27, 2026. ECF Doc. 1. K&O was served with the Complaint the next day. ECF Doc. 12. K&O obtained a 14-day clerk's extension, so K&O's deadline to respond to the Complaint is March 4, 2026. ECF Doc. 14. Other than the clerk's extension, K&O has not requested to extend the answer or other responsive pleading deadline. The Court has not set the scheduling order, so the additional thirty-day extension to the responsive pleading deadline will not impact any other deadline.

Good cause exists for this request for a brief extension. The critical issue in this lawsuit —the validity of the interchange commitment in the 2019 Amendment— is currently being considered by the STB, which is the primary arbiter of such matters. This necessarily implicates the doctrine of primary jurisdiction. *Reiter v.*

*Cooper*, 507 U.S. 258, 268 (1993); s*ee TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238–39 (10th Cir. 2007) (finding "when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate.") The purpose of the doctrine is to "allow agencies to render opinions on issues underlying and related to the cause of action." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005). Although courts may appropriately stay proceedings when primary jurisdiction is invoked, *see V & S Ry., LLC v. Hutchinson Salt Co.*, 2010 WL 5301031, at *6 (D. Kan. Dec. 20, 2010), K&O is not requesting a stay here; rather, K&O is merely asking for a brief extension of time to allow for the STB's decision on the 2019 Amendment.

Separately, a brief extension will allow K&O to most efficiently present its defenses to this Court. The STB's upcoming decision will inform K&O's motion to dismiss. Courts regularly find good cause to extend deadlines when the decision in another proceeding may impact the underlying proceeding. *See, e.g.*, *Ruszcyk v. Noor*, 349 F. Supp. 3d 754, 767 n.5 (D. Minn. Oct. 2, 2018) (granting extension of time to answer by 45 days after expiration of stay because separate criminal proceedings "may alter the factual and legal landscape underpinning this matter such that extra time may be needed to respond appropriately" and "Plaintiff may well need to amend or supplement his complaint once the stay is lifted").

K&O anticipates moving to dismiss the Complaint for failure to adequately plead the elements of the antitrust claims. *See* Fed. R. Civ. P. 12(b)(6). However, the STB's ruling may also provide additional defenses under the antitrust laws which

7

would likewise support dismissal of this case. *See, e.g.*, 49 U.S.C. § 11321(a) (stating a "rail carrier . . . participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law . . . ."); *Snohomish Cnty., Wash. v. Surface Transp. Bd.*, 954 F.3d 290, 293 (D.C. Cir. 2020) (describing STB's "authority over rail operations and acquisitions" as "exclusive and preemptive of state remedies" (citing 49 U.S.C. § 10501(b)); *Fayus Enters. v. BNSF Ry.*, 602 F.3d 444, 451 (D.C. Cir. 2010) (finding state antitrust statutes as preempted by federal regulatory authority (citing 49 U.S.C. § 10501(b)). Until the STB rules, K&O's antitrust defenses cannot be fully informed or argued. It makes little sense to require K&O to file a motion to dismiss by March 4, only to have to likely supplement that motion one month later. The requested extension will allow K&O's arguments to be fully developed and efficiently presented to the Court.

On February 11, K&O's counsel asked Plaintiffs' counsel for consent to a 30-day extension to the responsive pleading deadline. Plaintiff's counsel informed K&O's counsel that a 30-day extension was "too long," (but did consent to a 7-day extension). *See* Exhibit A, Email dated February 11, 2026. K&O's counsel again asked Plaintiffs' counsel for consent to an extension considering the upcoming decision from the STB, but Plaintiffs' counsel informed K&O's counsel that they likewise will oppose the request. *See* Exhibit B, Email dated February 26, 2026.

However, Plaintiffs will not suffer any prejudice resulting from this brief extension. As Plaintiffs' Complaint acknowledges, the current status has existed for many years without challenge by Plaintiffs or anyone else. In addition, if this case

proceeds, it will require extensive discovery typical of an antitrust case. A brief extension now is immaterial to the likely duration of this matter.

### Conclusion

K&O requests an extension of time to answer or otherwise respond to Plaintiffs' Complaint, up to and including April 3, 2026 or seven days after the STB's decision (whichever comes later). This request is made in light of the upcoming issuance of a decision from the STB on the 2019 Amendment. This will allow K&O to incorporate the STB's decision in its forthcoming Motion to Dismiss and will promote efficiency by avoiding piecemeal litigation of the issues.

Dated: February 26, 2026        Respectfully submitted,

*/s/ Jeffrey J. Simon*
Jeffrey J. Simon, KS 15231
Sara A. Fevurly, KS 27537
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
T: 816.983.8000
F: 816.983.8080
jeff.simon@huschblackwell.com
sara.fevurly@huschblackwell.com

Daniel G. Solomon, *admitted pro hac vice*
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
T: 202.378.2300
T: 314.480.1505
danny.solomon@huschblackwell.com

**ATTORNEYS FOR DEFENDANT KANSAS & OKLAHOMA RAILROAD, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 26th of February, 2026 to all counsel of record via the Court's electronic filing system.

*/s/ Jeffrey J. Simon*
***Attorney for Defendant Kansas &
Oklahoma Railroad, LLC***
