## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

WESKAN GRAIN LLC, *et al.*,

               *Plaintiffs*,

      v.

KANSAS & OKLAHOMA RAILROAD, LLC, *et al.*,

               *Defendants*.

No. 2:26-cv-2053-JAR-GEB

Oral Argument Requested

## UNION PACIFIC'S REPLY IN SUPPORT OF
## MOTION TO DISMISS OR STAY THE CASE

Melissa Hoag Sherman
SPENCER FANE LLP
6201 College Boulevard, Suite 500
Overland Park, KS 66211
Telephone: 913-327-5107
Fax: (913) 345-0736
msherman@spencerfane.com

Raymond A. Atkins (*pro hac vice*)
Allison C. Davis (*pro hac vice*)
Tobias S. Loss-Eaton (*pro hac vice*)
Stephen S. Laudone *(pro hac vice)*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Fax: (202) 736-8711
ratkins@sidley.com
allison.davis@sidley.com
tlosseaton@sidley.com
slaudone@sidley.com

*Attorneys for Defendant Union Pacific Railroad Company*

June 5, 2026

**TABLE OF CONTENTS**

Table of authorities ................................................................................................................ ii

Argument .............................................................................................................................. 1

I.     The Court should dismiss this effort to evade Congress's exclusive regulatory
       scheme. ...................................................................................................................... 1

       A.     Plaintiffs' claims are impliedly precluded. .............................................. 1

       B.     The *Keogh* doctrine bars Plaintiffs' rate challenges. .............................. 5

       C.     Plaintiffs' state-law antitrust claims are preempted. ............................... 7

II.    Alternatively, primary jurisdiction warrants a stay. ................................................ 8

Conclusion ...........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. Atlas Van Lines, Inc.*,
    No. 2:07-2861, 2008 WL 8602539 (D.S.C. Mar. 31, 2008) ....................................................6

*BNSF Ry. v. Albany & E. R.R.*,
    741 F. Supp. 2d 1184 (D. Or. 2010) ...................................................................................5

*Carlin v. DairyAmerica, Inc.*,
    705 F.3d 856 (9th Cir. 2013) ...............................................................................................6

*Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*,
    No. 3:19-cv-1412, 2025 WL 2164452 (D.P.R. July 30, 2025)...............................................9

*Credit Suisse Sec. (USA) LLC v. Billing*,
    551 U.S. 264 (2007)...........................................................................................................2, 10

*CSX Transp. Inc. v. Norfolk S. Ry*,
    No. 2:18-cv-530, 2019 WL 4564564 (E.D. Va. Sept. 9, 2019) ............................................4, 9

*CSX Transp. v. Williams*,
    406 F.3d 667 (D.C. Cir. 2005) (per curiam) .................................................................8

*Fayus Enters. v. BNSF Ry.*,
    602 F.3d 444 (D.C. Cir. 2010) .......................................................................................4, 7, 8

*HMM Co. v. Samsung Elecs. Am., Inc.*,
    No. 8:24-cv-1454, 2025 WL 3779037 (C.D. Cal. Feb. 11, 2025) ............................................9

*Hughes Tool Co. v. Trans World Airlines, Inc.*,
    409 U.S. 363 (1973)............................................................................................................2

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024).........................................................................................................8, 9

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
    555 F.2d 687 (9th Cir. 1977), *vacated on other grounds*, 437 U.S. 322 (1978).......................5

*Pan Am. World Airways, Inc. v. United States*,
    371 U.S. 296 (1963)........................................................................................................1, 3, 5

*PCS Phosphate Co. v. Norfolk S. Corp.*,
    559 F.3d 212 (4th Cir. 2009) ..............................................................................................4

*Ricci v. Chi. Mercantile Exch.*,
  409 U.S. 289 (1973)..................................................................................................9, 10

*U.S. Futures Exch., LLC v. Bd. of Trade of the City of Chi., Inc.*,
  953 F.3d 955 (7th Cir. 2020) ...................................................................................1

*In re Wheat Rail Freight Rate Antitrust Litig.*,
  759 F.2d 1305 (7th Cir. 1985) .................................................................................1

**Statutes**

49 U.S.C. § 10101....................................................................................................6

49 U.S.C. § 10501....................................................................................................4

49 U.S.C. § 10701....................................................................................................6

49 U.S.C. § 10704....................................................................................................6

49 U.S.C. § 10707....................................................................................................6

49 U.S.C. § 11323.................................................................................................3, 9

**Other Authorities**

49 C.F.R. § 1121.4.................................................................................................10

H.R. Rep. No. 104-422 (1995) (Conf. Rep.)............................................................6

**Administrative Proceedings**

*Kan. & Okla. R.R.—Lease & Operation Exemption with Interchange Commit-
  ment—Union Pac. R.R.*, No. FD 36849, 2026 WL 795881 (S.T.B. served Mar.
  20, 2026) .................................................................................................................9

*Wichita Terminal Ass'n—Pet. for Decl. Order*, No. FD 35765, 2015 WL 3875937
  (S.T.B. served June 23, 2015).................................................................................8

Pet. for Exemption Pursuant to 49 U.S.C. § 10502(a), *Kan. & Okla. R.R.—Lease
  & Operation Exemption with Interchange Commitment—Union Pac. R.R.*, No.
  FD 36849 (Sub-No. 1) (filed May 4, 2026), https://shorturl.at/934RR ...................2

Unopposed Motion for Access to Confidential Documents, *Kan. & Okla. R.R.—
  Lease & Operation Exemption with Interchange Commitment—Union Pac.
  R.R.*, No. FD 36849 (Sub-No. 1) (STB filed May 8, 2026),
  https://shorturl.at/kRI4w .......................................................................................3

**ARGUMENT**

Plaintiffs have no answer to Union Pacific's showing that they seek to use private antitrust claims to end-run Congress's exclusive regulatory scheme. They do not deny that the STB has clear authority over interchange commitments in rail leases; that the agency vigorously exercises that authority, balancing antitrust concerns with other congressional policies; or that the STB will consider *the specific lease terms at issue* in an ongoing proceeding. Plaintiffs cannot avoid the resulting conflict by redefining the implied-preclusion, *Keogh*, and primary-jurisdiction doctrines down to nothing. The Court should dismiss this case as precluded and preempted. At a minimum, it should stay the case pending agency action on these issues.

**I.    The Court should dismiss this effort to evade Congress's exclusive regulatory scheme.**

**A.    Plaintiffs' claims are impliedly precluded.**

1.    Plaintiffs say the Supreme Court "created" implied antitrust preclusion "for securities cases," and no case has applied it to "the railroad industry." Opp. 7–8 (citing *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264 (2007)). But *Credit Suisse* did not create this doctrine, which has long applied in various contexts—including railroad cases. *See In re Wheat Rail Freight Rate Antitrust Litig.*, 759 F.2d 1305, 1307, 1312–13 (7th Cir. 1985) (affirming dismissal of grain shippers' antitrust claims); *cf. Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296, 305–310 (1963) (applying the doctrine to air carriers). That is, implied preclusion is not "a securities doctrine," but "an antitrust doctrine" that "applies across regulatory boundaries." *U.S. Futures Exch., LLC v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 968 (7th Cir. 2020).

2.    Plaintiffs admit the detailed STB regime governs interchange commitments in rail leases, satisfying implied preclusion's first prong. Opp. 8. They say the second prong is not met, however, because K&O did not "disclose and obtain approval for" the lease amendments, so there

is no "exercise of regulatory authority in this instance." *Id.* Yet K&O applied for STB approval over a year ago, the agency already issued a decision, and its proceedings continue. UP Br. 3–4.

In any event, the second prong does not ask whether the regulator has already blessed the specific activities at issue, but whether it "actively enforces the [applicable] rules and regulations." *Credit Suisse*, 551 U.S. at 283; *see, e.g.*, *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 386 (1973) (noting that implied preclusion applied in *Pan Am* "even though the [agency] had taken no action to investigate, let alone act on, the alleged misfeasance"). The STB actively polices interchange commitments, including for competition concerns. *See* UP Br. 8–9.

On the third prong—a risk of conflicting standards—Plaintiffs claim they "do not contest rate reasonableness," instead attacking the "secret surcharge" in the lease amendments. Opp. 9. That is no answer. Plaintiffs want this Court to decide whether the lease's interchange commitment is unlawfully anticompetitive. *Id.* at 23–24; Compl. ¶¶ 8–9. Likewise, the STB is empowered to decide whether this interchange commitment satisfies the public interest—including whether it is anticompetitive. *See* UP Br. 5–7, 9. If the STB approved the interchange commitment and this Court held it unlawful, the resulting conflict would be obvious. *See Hughes*, 409 U.S. at 385 (agency would consider "[c]ompetition and monopoly" concerns in authorizing air-carrier transactions, so its authority "pre-empt[ed] the antitrust field").

Nor is this risk theoretical. In May 2026, K&O renewed its request that the STB approve this interchange commitment. K&O's STB petition explains that "the interchange commitment does not produce the competitive harms that Weskan has alleged."[1] Union Pacific intends to file a response supporting K&O's request. And Weskan has indicated its intent to again challenge the

---

[1] *See* Pet. for Exemption Pursuant to 49 U.S.C. § 10502(a) at 1–4, *Kan. & Okla. R.R.—Lease & Operation Exemption with Interchange Commitment—Union Pac. R.R.*, No. FD 36849 (Sub-No. 1) (filed May 4, 2026), https://shorturl.at/934RR; *id.* at 17–35 (discussing these points in detail).

interchange commitment's legality.[2]  Thus, the STB will soon consider the same arguments Plaintiffs make here.  Resolving those arguments on the merits will require the agency to address essentially the same questions Plaintiffs ask this Court to decide.  While implied preclusion does not require ongoing, overlapping agency proceedings, this is all the more reason for dismissal.

On the fourth prong—whether the questioned activity falls within the regulated heartland—Plaintiffs say they do not attack "rates," "service," or "a merger or a line sale."  Opp. 9.  But even if this case were not ultimately about rates, *see infra* § I.B, Plaintiffs ignore that the STB's approval power equally reaches a "lease … to operate property."  49 U.S.C. § 11323(a)(2).  That kind of broad authority supports implied preclusion.  *See Pan Am.*, 371 U.S. at 304 (emphasizing the agency's power over air-carrier "mergers, purchases, [and] leases").

Plaintiffs also contend that "Defendants are asking the Court to invoke a regulatory framework that they themselves avoided."  Opp. 9.  But K&O is currently seeking STB approval for the lease amendments, and whether it should have done so more promptly has no bearing on whether Weskan is now asking the Court to step into the heartland of the STB's regulatory realm.

3.    Pivoting, Plaintiffs claim "[m]any federal antitrust cases involving private agreements to which railroads are parties have rejected preemption or immunity arguments."  Opp. 9–10.  This argument mistakenly conflates distinct doctrines.  It confuses express ICCTA preemption with implied antitrust preclusion, and it conflates the viability of private antitrust claims *attacking* railroads' voluntary agreements with contractual claims seeking to *enforce* those agreements.

Plaintiffs' only appellate case held merely that the ICCTA did not preempt a state-law claim for breach of an easement covenant, reasoning that "[v]oluntary agreements between private

---

[2] *See* Unopposed Motion for Access to Confidential Documents at 2–3, *Kan. & Okla. R.R.—Lease and Operation Exemption with Interchange Commitment—Union Pacific R.R.*, No. FD 36849 (Sub-No. 1) (STB filed May 8, 2026), https://shorturl.at/kRI4w.

parties … are not presumptively regulatory acts" that trigger express preemption. *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218, 220 (4th Cir. 2009). *PCS Phosphate* did not involve antitrust claims or discuss implied antitrust preclusion.

Plaintiffs' cited district court cases did involve antitrust claims, but they did not address implied preclusion either—much less show that "there is no risk of conflicting guidance from a court adjudicating an antitrust matter involving a railroad." *Contra* Opp. 10. *CSX Transportation v. Norfolk Southern Railway* held that the ICCTA did not preempt a major railroad's federal antitrust claims against two other railroads (another major railroad and a smaller terminal railroad co-owned by the two major railroads). No. 2:18-cv-530, 2019 WL 4564564, at *7–8 (E.D. Va. Sept. 9, 2019). The court held that the claims arose from a "contract" among "the owner-shareholder companies," which is presumptively "not regulatory" under *PCS Phosphate*. *Id.*

*CSX* is inapt. It did not even discuss implied antitrust preclusion. Further, while the railroad-plaintiff there was trying to *enforce* its rights under an agreement with other railroads, Plaintiffs here are shippers *attacking* an STB-jurisdictional contract to which they are not parties. *Cf. Fayus Enters. v. BNSF Ry.*, 602 F.3d 444, 451 (D.C. Cir. 2010) (emphasizing the difference, for ICCTA preemption purposes, between "conventional contract enforcement" and "shippers' quests for non-contractual relief" against railroads). Moreover, in *CSX*, "the STB [had] decided to hold its related proceeding in abeyance pending resolution" of the court case. 2019 WL 4564564, at *7; *contra* Opp. 21. Here, by contrast, ongoing agency proceedings will address the same basic issues as this case.[3]

---

[3] *CSX* did question, in dicta, whether the ICCTA can ever override another federal law. That skepticism was misplaced. ICCTA expressly "preempt[s] the remedies provided under Federal or State law" to the extent of a conflict. 49 U.S.C. § 10501(b). Thus, if ICCTA cannot be harmonized with another federal law, ICCTA prevails. *See* UP Br. 11; *Fayus*, 602 F.3d at 449.

4

*BNSF Railway v. Albany & Eastern Railroad* similarly involved a contract dispute between railroads. One railroad sued another for breach of contract; the other railroad raised as an affirmative defense that the interchange commitment at issue was "an illegal tying arrangement" under the Sherman Act. 741 F. Supp. 2d 1184, 1191 (D. Or. 2010). The court declined to hold the affirmative defense preempted by the ICCTA. *Id.* at 1198. Again, the court did not address implied antitrust preclusion, and no agency proceedings were ongoing. *See id.* at 1192.

4.      Finally, Plaintiffs contend that implied antitrust preclusion cannot apply where, as here, a statute already contains an *express* antitrust carveout that does not cover the transaction at issue. *See* Opp. 10–11 (citing *Colo. & Wyo. Ry. Co. v. Atchison, Topeka & Santa Fe Ry.*, 1974 WL 964, at *4 (D. Colo. Oct. 2, 1974)). But the Supreme Court has applied the doctrine in this same situation, despite a dissent making the same argument as Plaintiffs. *See Pan Am.*, 371 U.S. at 304, 309; *id.* at 313 (Brennan, J., dissenting); *see also Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 691 & n.8 (9th Cir. 1977) (collecting cases holding that, "despite a grant of express immunity that does not cover the conduct charged, antitrust immunity may still be implied"), *vacated on other grounds*, 437 U.S. 322 (1978).

### B.      The *Keogh* doctrine bars Plaintiffs' rate challenges.

The *Keogh* doctrine bars state or federal antitrust claims based on rates actively regulated by a federal agency. UP Br. 12. Plaintiffs say their claims do not implicate this doctrine because they are not challenging a filed rate, but a "private" or "side agreement[]." Opp. 17–18 (citing *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 797 (6th Cir. 2012)). Yet the crux of their claims is that the interchange commitment will allegedly lead to "higher transportation rates." *Id.* 6. Further, unlike with the "side agreements" in *Williams*, the STB actively licenses railroad leases and requires that interchange commitments be disclosed so they can be challenged and "supervise[d]." *See* UP Br. 5–7. Plaintiffs' insistence that "Defendants never submitted the 2019 Lease

5

Amendment to the STB," Opp. 17, is baffling.  K&O did precisely that over a year ago, and its renewed approval request remains pending.  *Supra* pp. 2–3.

In any event, Union Pacific explained that the *Keogh* doctrine does more than guard against "unfair" rates, *contra* Opp. 17; it also advances "federal preemption (or the supremacy of federal law)" and shows "deference to federal agency expertise (or primary jurisdiction)" in rate-review and rate-making.  *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 868 (9th Cir. 2013).  To that end, the doctrine applies even when rates are no longer *filed* in the traditional sense, so long as the agency exercises congressionally delegated authority to regulate rates.  UP Br. 12 (collecting cases).  Plaintiffs do not dispute that the STB has exclusive authority over railroad rates and inter-change commitments, nor that the agency is actively evaluating the public interest and competitive impacts of the contract and rates at issue here.  Opp. 8, 20–21.  That suffices to trigger the exclusive "scheme of uniform [railroad] rate regulation."  *Carlin*, 705 F.3d at 868.  Even Plaintiffs' cited cases recognize that the doctrine "applies even if the market participants are not required to file their rates with the agency."  *Beach v. Atlas Van Lines, Inc.*, No. 2:07-2861, 2008 WL 8602539, at *3 (D.S.C. Mar. 31, 2008).

Plaintiffs' response is unavailing.  They rely on two cases arising in the *motor-carrier* con-text to claim that the ICCTA abrogated the *Keogh* doctrine for railroads.  Opp. 18 & n.6.  Contrary to Plaintiffs' citation-free assertion, however, the ICCTA treats railroad and motor-carrier rates very differently.  While Congress, through the ICCTA, "virtually eliminate[d] existing ICC motor carrier rate regulation," H.R. Rep. No. 104-422, at 205 (1995) (Conf. Rep.), it retained a compre-hensive regulatory scheme for railroad rates administered by the STB.  UP Br. 5; *see* 49 U.S.C. §§ 10701, 10704, 10707; *see also id.* § 10101(6).  Plaintiffs' motor-carrier cases thus reveal noth-ing about how *railroad* rates are regulated or how the *Keogh* doctrine applies here.

Finally, Plaintiffs again declare that K&O's failure to disclose the interchange commitment to the STB avoids the *Keogh* doctrine. Opp. 18 (citing *Beach*, 2008 WL 8602539, at *3–4). But again, K&O *has* submitted the interchange commitment to the STB—twice—and the agency's review is pending. There is no avoiding that Plaintiffs' claims would intrude on the exclusive STB regulatory scheme.

### C.    Plaintiffs' state-law antitrust claims are preempted.

If Plaintiffs' federal antitrust claims unacceptably interfere with the STB regime—as just explained—then allowing even broader claims under multiple states' laws creates at least as much conflict. As the leading case explains, "[s]tate antitrust claims obviously present a risk of balkanized legal norms," contrary to ICCTA's deregulatory goals. *See Fayus*, 602 F.3d at 449, 452. The fact that "State antitrust laws provide remedies not available under federal law," Opp. 14, is precisely the problem. *Fayus* thus held that the ICCTA preempted shippers' state antitrust claims alleging that railroads "conspired to impose fuel surcharges … that raised the shipping rates above competitive levels," 602 F.3d at 445, 453–54—much like Plaintiffs here allege that the two railroads "conspired to impose a secret surcharge designed to eliminate competition." Opp. 12. And *Fayus* specifically held that the ICCTA preempts "*Illinois Brick* repealers" (state laws allowing indirect-purchaser antitrust claims) of the sort Plaintiffs invoke. 602 F.3d at 454; Opp. 14.

Plaintiffs make three attempts to evade *Fayus*. *First*, they repeat that they "do not challenge the reasonableness of any rate." Opp. 12. But they also insist that, "if forced to pay the secret surcharge, Weskan would pay higher transportation rates," and that the interchange commitment is unlawful because it is "is untethered to any reasonable asset use fee." *Id.* at 6, 12. Just as the *Fayus* plaintiffs attacked the railroads' fuel-surcharge calculations, Plaintiffs here attack the interchange-commitment calculation and its effect on rates. *See* 602 F.3d at 452–53.

*Second*, Plaintiffs say their claims target "conduct that was never authorized" by the STB. Opp. 13–14, 16.  But that was also true in *Fayus*; in fact, the STB "had found aspects of the rate computation 'unfair' or 'unreasonable.'"  602 F.3d at 452.

*Third*, Plaintiffs say "no risk of balkanized legal norms" exists because *Fayus* involved "national practices," while this case involves "a single secret agreement between two specific defendants."  Opp. 15.  But that point is not relevant to *Fayus*'s reasoning; the D.C. Circuit was talking about the risks of state antitrust law generally, not the particular claims there.  602 F.3d at 452.  Indeed, the ICCTA's "balkanization" analysis considers not only the specific claims at issue, but also whether "the practical and cumulative impact" of allowing "similar" claims would result in a regulatory "patchwork."  *See CSX Transp. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005) (per curiam); *Wichita Terminal Ass'n—Pet. for Decl. Order*, No. FD 35765, 2015 WL 3875937, at *4 (S.T.B. served June 23, 2015).  The answer is "obviously" yes.  *Fayus*, 602 F.3d at 452.

Plaintiffs' remaining arguments fail.  As they admit, the Tenth Circuit will uphold ICCTA preemption if applying state law would "have the effect of … unreasonably interfering with railroad transportation."  Opp. 12 (citation omitted).  The sort of regulatory patchwork discussed in *Fayus* is just such a form of interference.  *See* 602 F.3d at 445.  And while Plaintiffs also say preemption is a "fact-driven" affirmative defense, Opp. 11–12, they identify no other facts the Court might need to know.  *Cf. Fayus*, 602 F.3d at 445 (affirming grant of motion to dismiss).

## II.    Alternatively, primary jurisdiction warrants a stay.

Absent dismissal, the Court should at least stay this action until the STB can resolve the overlapping questions presented.  UP Br. 14–15.  Plaintiffs' responses lack merit.

1.    Plaintiffs say the primary-jurisdiction doctrine, which allows courts to stay and refer issues to expert agencies, did not survive *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  Opp. 19–20.  That is a significant exaggeration.  *Loper Bright* held merely that courts are

8

not bound by agency interpretations of ambiguous statutes.  603 U.S. at 394.  Thus, while *Loper Bright* may cut against a referral simply to consider a statute that a court could equally interpret— which is all Plaintiffs' cited cases say—"*Loper Bright* is inapposite" to other kinds of primary-jurisdiction issues.  *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, No. 3:19-cv-1412, 2025 WL 2164452, at *28 n.40 (D.P.R. July 30, 2025); *HMM Co. v. Samsung Elecs. Am., Inc.*, No. 8:24-cv-1454, 2025 WL 3779037, at *2 n.2 (C.D. Cal. Feb. 11, 2025).

Union Pacific does not urge a stay so the agency can interpret ambiguous statutory language.  Rather, a stay is warranted because Congress expressly delegated to the STB the duty to authorize the acquisition and operation of rail lines, including through leases and lease amendments.  *See* 49 U.S.C. § 11323(a); UP Br. 5.  In analogous cases, the Supreme Court has made clear that such issues "should be dealt with in the first instance by those especially familiar with the customs and practices of the industry," so "the antitrust action should be stayed until the administrative officials have had opportunity to act."  *See Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 302, 305 (1973).  In other words, if this Court does not dismiss the case outright, it will benefit from seeing the STB's public-interest analysis *before* it finally resolves either implied preclusion or the antitrust merits.  *See id.*; *HMM*, 2025 WL 3779037, at *2 n.2.

2.        Plaintiffs also say primary jurisdiction is improper because "the STB lacks jurisdiction" over the lease amendments at issue.  Opp. 21.  Nonsense.  The STB has confirmed that "K&O is required to obtain Board authority to renew the Lease."  *See Kan. & Okla. R.R.—Lease & Operation Exemption with Interchange Commitment—Union Pac. R.R.*, No. FD 36849, 2026 WL 795881, at *7 (S.T.B. served Mar. 20, 2026); *see also* UP Br. 5–7.  Plaintiffs again point to *CSX*, *see* Opp. 21–22, but that case does not address primary jurisdiction.  2019 WL 4564564, at *8.  And to the extent *CSX* suggested that an antitrust court's order enjoining a particular practice

9

would not conflict with an STB order approving the very same practice, *see* Opp. 21, its reasoning conflicts with Supreme Court precedent, *see Credit Suisse*, 551 U.S. at 273, 284.

3. Finally, Plaintiffs say a stay is unwarranted because "the issues are different" in the STB's lease-authorization proceeding: This case involves "antitrust" claims, whereas "[t]he STB will decide whether the lease amendment" is "anticompetitive." Opp. 20–21. That is no difference. Plaintiffs' antitrust claims here likewise allege that the lease amendment is unlawfully "anticompetitive." *Id.* at 37. To be sure, the legal issues are not identical, but primary jurisdiction requires only that "some facets of the dispute" fall within the agency's jurisdiction. *Ricci*, 409 U.S. at 302. And the daylight between the two sets of issues is all the more reason to be cautious. The STB's broader inquiry encompasses both competition concerns and "the public interest," Opp. 20, increasing the risk of contrary results. *Supra* p. 2.

It does not matter that some parties who are Plaintiffs here have not been involved in the STB actions. *Contra* Opp. 21. Any Plaintiffs who so desired could participate before the STB by responding to K&O's lease-approval petition. *See* 49 C.F.R. § 1121.4(a). Nor do Plaintiffs claim that Weskan and CXR cannot fully represent all their interests before the agency. And ultimately, what matters is not how much the parties overlap, but that the complaint here raises issues "that Congress has placed within the jurisdiction of" the agency. *See Ricci*, 409 U.S. at 305.

## CONCLUSION

The Court should dismiss this case for failure to state a claim. Alternatively, it should stay the case pending STB action on K&O's pending petition.

10

June 5, 2026                                    Respectfully submitted,

 s/ *Melissa Hoag Sherman*

Raymond A. Atkins (*pro hac vice*)          Melissa Hoag Sherman, KS #20278
Allison C. Davis (*pro hac vice*)           SPENCER FANE LLP
Tobias S. Loss-Eaton (*pro hac vice*)       6201 College Boulevard, Suite 500
Stephen S. Laudone (*pro hac vice*)         Overland Park, KS 66211
SIDLEY AUSTIN LLP                           Telephone: 913-327-5107
1501 K Street, N.W.                         Fax: (913) 345-0736
Washington, D.C. 20005                      msherman@spencerfane.com
Telephone: (202) 736-8000
Fax: (202) 736-8711
ratkins@sidley.com
allison.davis@sidley.com
tlosseaton@sidley.com
slaudone@sidley.com

*Attorneys for Defendant Union Pacific Railroad Company*

11

## CERTIFICATE OF SERVICE

I certify that on June 5, 2026, I caused the foregoing document to be filed through the CM/ECF system, which will serve notice on all registered counsel.

*s/ Melissa Hoag Sherman*
Attorney for Defendant
Union Pacific Railroad Company